# ORCHARD v. ALEXANDER.

# PIERCE v. FRACE.

ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

Nos. 192, 193. Argued and submitted March 13, 1895. — Decided April 1, 1895.

The Commissioner of the General Land Office may direct the proper local land officer to hear and pass upon charges of fraud in the final proof of a preëmption claim upon which the requisite cash entry has been paid, and has jurisdiction to review the judgment of the local land officer in respect thereof; and the Secretary of the Interior has jurisdiction to review such judgment of the Commissioner, and to order such an entry, shown to be fraudulent, to be cancelled.

WHILE these two cases differ in their particular facts, they agree in the question involved, and for convenience may be considered together. As the opinion of the Supreme Court of the State of Washington was filed in the second case, the special facts of that will be stated. The action was commenced in the District Court of the Territory of Washington, sitting in and for the county of Pierce.

The complaint alleged that the plaintiff was the owner and entitled to the possession of a certain described tract or parcel of real estate situate in the county of Pierce, and prayed judgment for the recovery of possession, together with rents, issues, and profits.

The answer, beyond a general denial, set up by way of equitable defence that on December 20, 1880, the land described in plaintiff's complaint was unoccupied, unappropriated public land of the United States, and that on that day the plaintiff filed his declaratory statement therefor under the preëmption laws of the United States; that on February 13, 1883, he made his final proof, and on March 12, 1883, his cash entry was allowed by the register and receiver of the local land office; that on August 7, 1883, the defendant filed in the office of the Commissioner of the General Land Office, and afterward with the local land officers, his corroborated affidavit, in which he alleged that plaintiff had at no time estab-

lished his residence on the land; that he had failed to improve and cultivate the same as required by law, and that the cash entry had been procured by fraud; that on May 16, 1885, the Commissioner of the General Land Office ordered a hearing on those charges before the local land officers; and that in pursuance of such order the plaintiff and defendant appeared before those officers on July 13, 1885, for a trial of the questions raised and presented by the defendant's affidavits; that a trial was had, evidence was submitted, and the case argued by counsel, and thereupon the local land officers found as facts that the plaintiff had at no time established his residence on the land embraced in his entry, and that he had failed to improve and cultivate the land as required by law, and, as a conclusion of law therefrom, that the plaintiff's entry should be cancelled; that the plaintiff appealed to the Commissioner of the General Land Office, who, on June 3, 1886, affirmed the decision of the local land officers; that he took a further appeal to the Secretary of the Interior, who, on March 31, 1888, sustained the Commissioner of the General Land Office, and cancelled plaintiff's entry; that after this defendant filed upon the land under the homestead laws of the United States, made final proofs thereon, paid to the government of the United States the required price, and on July 26, 1889, received from the receiver of the land office a patent certificate for the land, by virtue whereof he claimed to be the owner and entitled to the possession.

To this answer an amended reply was filed, in which the plaintiff alleged that the proceedings initiated by the defendant were wholly void on the ground that the officers referred to had no jurisdiction over the lands or of the plaintiff, for the reason that the United States had theretofore sold and disposed of the land to plaintiff and received from him the sum of $400, in consideration of which sum the United States had undertaken and agreed to execute and deliver to him a patent. He set forth in detail that he had, in accordance with the preëmption laws of the United States and the requirements of the General Land Office, published notice of his intention to make final proof; that on the date named in

such publication he had appeared with his witnesses before the local land officers and made such final proof, and paid to them the land office fees and the sum of $400, the legal price of the land; that they had accepted such final proof as sufficient and received such sum of money, and executed and delivered to him a duplicate receiver's receipt therefor, and that thereupon he became entitled to have and receive from the United States, in the due course of the administration of the General Land Office, a patent for the land; that no lawful proceedings had ever been taken by the United States to rescind the contract so entered into between the government and himself, nor had the sum of $400, or any part thereof, ever been repaid or tendered to him by the government. He denied that the defendant had, in his affidavits, alleged that the plaintiff failed to improve and cultivate the land as required by law, or that his entry had been procured by fraud. He also denied that the decision of the Commissioner of the General Land Office was affirmed by the Secretary of the Interior, except as to finding that plaintiff had not made his residence upon the land.

To this amended reply the defendant demurred on the ground that it did not contain facts sufficient to constitute a defence to the affirmative matter set up in the answer. The demurrer was sustained, the case at the time of the hearing being in the Superior Court of the State of Washington in and for the county of Pierce, Washington having been admitted as a State since the commencement of the action. No further amendment being desired, judgment was entered on the pleadings, in favor of the defendant. This judgment was affirmed by the Supreme Court of the State, 2 Washington, 81, whereupon plaintiff brought this writ of error.

*Mr. W. H. Pritchard* for plaintiff in error. *Mr. S. F. Phillips* and *Mr. F. D. McKenney* were with him on his brief.

*Mr. C. C. Lancaster,* (with whom were *Mr. John P. Judson* and *Mr. W. C. Sharpstein,*) for defendants in error submitted on their brief.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

Section 2259, Rev. Stat., authorizes one possessed of certain personal qualifications, " who has made, or hereafter makes, a settlement in person on the public lands subject to preëmption, and who inhabits and improves the same, and who has erected or shall erect a dwelling thereon," to enter not exceeding 160 acres. Section 2262 provides that before any person shall be allowed to enter lands he shall make oath before the register or receiver that he has never had the benefit of any right of preëmption; that he is not the owner of 320 acres of land; that he has not settled upon and improved the land for speculation, but in good faith to appropriate it to his own exclusive use, and that he has not directly or indirectly made any agreement or contract by which the title which he is to acquire is to inure in whole or in part to any person except himself; and further that a false oath in these respects shall forfeit the money which he has paid and all right and title to the land. This oath is to be filed in the local land office and a duplicate thereof transmitted to the General Land Office. Section 2263 reads:

" Prior to any entries being made under and by virtue of the provisions of section twenty-two hundred and fifty-nine, proof of the settlement and improvement thereby required shall be made to the satisfaction of the register and receiver of the land district in which such lands lie, agreeably to such rules as may be prescribed by the Secretary of the Interior."

The contention of the plaintiff is that this last section authorizes a quasi-judicial hearing before the local land officers, whose decision is tantamount to a judgment binding both the government and the applicant in respect to the matter of settlement and improvement, and one which, inasmuch as no special right of appeal or review is given, is not subject to reexamination by the Commissioner of the General Land Office or the Secretary of the Interior, but is a final adjudication as to those matters. As a necessary result therefrom he contends that the order of the Commissioner directing a hearing on the

charges made by the defendant, as well as the hearing before
the local land officers in pursuance thereof, were all without
authority and unavailing to disturb the conclusive force of
the adjudication theretofore made. Upon the question which
this contention presents the case depends, and to it, therefore,
we direct our attention.

If there were no other provision in the statutes than that
found in section 2263, the contention of the plaintiff would
find support in the decisions of this court. By the act of
May 29, 1830, 4 Stat. 420, c. 208, the right of preëmption
was given to certain settlers on the public lands. Section 3
was similar to section 2263, in that it required that prior to
any entry " proof of settlement or improvement shall be made
to the satisfaction of the register and receiver." In *Lytle* v.
*Arkansas*, 9 How. 314, 333, it was held that their decision was
conclusive upon the questions of settlement and improvement,
the court saying : " The register and receiver were constituted,
by the act, a tribunal to determine the rights of those who
claimed preëmptions under it. From their decision no appeal
was given. If, therefore, they acted within their powers, as
sanctioned by the Commissioner, and within the law, and the
decision cannot be impeached on the ground of fraud or
unfairness, it must be considered final."

Subsequently, and on July 4, 1836, 5 Stat. 107, c. 352, Con-
gress, without any repeal of the act of 1830, passed an act to
reorganize the General Land Office, the first section of which
is as follows :

" That from and after the passage of this act, the executive
duties now prescribed, or which may hereafter be prescribed
by law, appertaining to the surveying and sale of the public
lands of the United States, or in anywise respecting such
public lands, and, also, such as relate to private claims of land,
and the issuing of patents for all grants of land under the
authority of the government of the United States, sha. be
subject to the supervision and control of the Commissioner of
the General Land Office, under the direction of the President
of the United States."

This section, so far as any question here is concerned, was

substantially carried forward into the Revised Statutes, as section 453, and is still in force. Under this law the case of *Barnard's Heirs* v. *Ashley's Heirs*, 18 How. 43, 45, arose. It was there contended, in accordance with the prior cases, that the decision of the register and receiver was final and conclusive, but, the entries having been made on *ex parte* affidavits, the right of review by the Commissioner of the General Land Office was sustained, the court saying :

" The necessity of ' supervision and control,' vested in the Commissioner, acting under the direction of the President, is too manifest to require comment, further than to say that the facts found in this record show that nothing is more easily done than apparently to establish, by *ex parte* affidavits, cultivation and possession of particular quarter sections of land, when the fact is untrue. That the act of 1836 modifies the powers of registers and receivers to the extent of the Commissioner's action in the instances before us, we hold to be true. But if the construction of the act of 1836, to this effect, were doubtful, the practice under it for nearly twenty years could not be disturbed without manifest impropriety.

" The case relied on, of *Wilcox* v. *Jackson*, 13 Pet. 511, was an ejectment suit, commenced in February, 1836; and as to the acts of the register and receiver, in allowing the entry in that case, the Commissioner had no power of supervision, such as was given to him by the act of July 4, 1836, after the cause was in court.

" In the next case, 9 How. 333, all the controverted facts on which both sides relied had transpired, and were concluded before the act of July 4, 1836, was passed; and therefore its construction, as regards the Commissioner's powers, under the act of 1836, was not involved. Whereas, in the case under consideration, the additional proceedings were had before the register and receiver in 1837, and were subject to the new powers conferred on the Commissioner."

It will be noticed that the right of review on the part of the Commissioner of the General Land Office, sustained by this decision, was one existing under the act of 1836, and before the act of September 4, 1841, c. 16, 5 Stat. 453, section

11 of which provided that "all questions as to the right of preëmption arising between different settlers shall be settled by the register and receiver of the district within which the land is situated, subject to an appeal to and a revision by the Secretary of the Treasury of the United States." This section is substantially reënacted in the Revised Statutes, section 2273. The case, therefore, is a direct decision that the power of supervision and control granted by the act of 1836, although in terms extending to only executive duties, included the right to review a decision of the local land officers as to the matter of settlement and improvement, at least in cases in which the proof before those officers was by *ex parte* affidavits. And if the right of supervision and control over their decision exists under those circumstances, it is difficult to perceive any reason why it does not exist under all. There is certainly nothing in the statute which in terms creates any distinction, and, indeed, in the nature of things there is no foundation for any. If a provision that proof of settlement and improvement shall be made to the satisfaction of the local land officers does not exclude a review, when such officers are satisfied by evidence in writing, there is no legal principle on which it can be held that there is no review when they are not satisfied by written evidence, but require in addition oral testimony. Indeed, could not the Secretary of the Interior, by virtue of the power given him in said section 2263, prescribe as a rule of procedure that only affidavits should be receivable, and so bring every case within the letter of this decision? But the grant of power to the local officers is not limited by the manner in which they exercise that power, and does not rest at all upon the kind of evidence on which they act. Their adjudication must be final in all cases, or it is final in none. It was final when no supervising power was by statute vested in the Commissioner of the General Land Office. It ceased to be final when the general power of review and supervision of all "executive duties" concerning the survey and sales of lands was vested in the higher officials of the Land Department at Washington.

Stress is laid upon the words "executive duties," as though

the approval of the evidence of settlement and improvement was not an executive duty but a purely judicial act. This is a mistake. True, it involves the weighing of testimony and the exercise of judgment, but equally so do many administrative acts. The approval of a bond, for instance, involves an inquiry as to the sufficiency of the sureties, which is to be determined by the testimony in support thereof, as well as a consideration of the question whether its terms satisfy all the demands of the law. But who would think of calling it a purely judicial act? Any determination of a ministerial officer may by statute be declared final and conclusive, but such finality does not change its character and transform it from an executive to a judicial act.

The approval of the evidence offered in respect to settlement and improvement is only quasi-judicial. It is as much an administrative as a judicial act. There is no contest before the register and receiver. No one represents the government. The action taken is purely *ex parte*. It is only one step in the procedure by which through an executive department the title to public land is obtained by an individual.

In this connection it may be remarked that the plaintiff in his amended reply does not allege that the local land officers demanded from him oral testimony, or that they did not act alone upon written evidence filed with them. There is, therefore, nothing in the record which excludes the case from the very terms of the decision from which we have just quoted.

Since that decision the question of the supervising power of the general officers of the Land Department has been more than once presented to this court. In *Harkness* v. *Underhill*, 1 Black, 316, 325, the first proposition in the syllabus is thus stated: "A fraudulent entry of public land allowed by a register and receiver, upon false proofs of settlement, occupancy and housekeeping, may be set aside and vacated by the Commissioner of the General Land Office." And in the opinion, pronounced by Mr. Justice Catron, it is said: "The question is again raised, whether this entry, having been allowed by the register and receiver, could be set aside by the Commissioner. All the officers administering the public lands were bound by

the regulations published May 6, 1836. 2 L. L. & O. 92.
These regulations prescribed the mode of proceeding to vacate
a fraudulent occupant entry, and were pursued in the case
before the court. This question has several times been raised
and decided in this court, upholding the ·Commissioner's
powers. *Garland* v. *Winn*, 20 How. 8; *Lytle* v. *State of
Arkansas*, 22 How. 193."

*Hosmer* v. *Wallace*, 97 U. S. 575, 578, was a case coming from
the Supreme Court of California (47 California, 461). In the
opinion filed in the state court there is quite an extended dis-
cussion of the question and the conclusion reached is in favor
of the reviewing power of the Commissioner of the General
Land Office.

In this court the opinion was announced by Mr. Justice
Field, who thus stated the facts and the decision:

"In July, 1866, the plaintiff filed a declaratory statement
in the proper land office, claiming to preëmpt the premises
together with other land, alleging his settlement thereon in
October, 1856, and in September following made proof of
his claim before the register and receiver, and was allowed
to enter the land. He then paid the purchase money and
obtained a certificate of payment. In the meantime, the act
of July 23, 1866, was passed, and under it the defendant
claimed the right to purchase the premises. The Commis-
sioner of the General Land Office thereupon directed the reg-
ister and receiver at San Francisco to investigate the entry of
the plaintiff, and to take such testimony as might be offered
by him and the defendant concerning their respective claims,
and to report the same to him, together with their decision.
Both parties appeared before these officers and supported
their respective claims. The decision of the officers was in
favor of the plaintiff; the defendant appealed to the Com-
missioner, by whom the decision was reversed, and the land
awarded to him. On further appeal to the Secretary of the
Interior, the decision of the Commissioner was affirmed; and,
upon payment of the purchase money, a patent was issued to
the defendant. The decision of the Commissioner and of the
Secretary was clearly correct."

It is true that the case in this court did not turn on the matter of settlement or improvement, and so the decision does not reach to the precise question here presented, but it is pertinent as an affirmation of the Commissioner's right of review of preëmption entries.

*Cornelius* v. *Kessel*, 128 U. S. 456, holds directly that the Commissioner may, at least in some cases, review the action of the local land officers in respect to such entries, though declaring that his power is not arbitrary and unlimited. In the recent case of *Knight* v. *Land Association*, 142 U. S. 161, 177, the power of the Secretary was considered at length by Mr. Justice Lamar, who, speaking for the court, said, after referring to sections 441, 453, and 2478 of the Revised Statutes:

"The phrase, 'under the direction of the Secretary of the Interior,' as used in these sections of the statutes, is not meaningless, but was intended as an expression in general terms of the power of the Secretary to supervise and control the extensive operations of the land department of which he is the head. It means that, in the important matters relating to the sale and disposition of the public domain, the surveying of private land claims and the issuing of patents thereon, and the administration of the trusts devolving upon the government, by reason of the laws of Congress or under treaty stipulations, respecting the public domain, the Secretary of the Interior is the supervising agent of the government to do justice to all claimants and preserve the rights of the people of the United States. As was said by the Secretary of the Interior on the application for the recall and cancellation of the patent in this pueblo case (5 Land Dec. 494): 'The statutes in placing the whole business of the department under the supervision of the Secretary, invest him with authority to review, reverse, amend, annul or affirm all proceedings in the department having for their ultimate object to secure the alienation of any portion of the public lands, or the adjustment of private claims to lands, with a just regard to the rights of the public and of private parties. Such supervision may be exercised by direct orders or by review on appeals.

The mode in which the supervision shall be exercised in the absence of statutory direction may be prescribed by such rules and regulations as the Secretary may adopt. When proceedings affecting titles to lands are before the department the power of supervision may be exercised by the Secretary, whether these proceedings are called to his attention by formal notice or by appeal. It is sufficient that they are brought to his notice. The rules prescribed are designed to facilitate the department in the despatch of business, not to defeat the supervision of the Secretary. For example, if, when a patent is about to issue, the Secretary should discover a fatal defect in the proceedings, or that by reason of some newly ascertained fact the patent, if issued, would have to be annulled, and that it would be his duty to ask the Attorney General to institute proceedings for its annulment, it would hardly be seriously contended that the Secretary might not interfere and prevent the execution of the patent. He could not be obliged to sit quietly and allow a proceeding to be consummated, which it would be immediately his duty to ask the Attorney General to take measures to annul. It would not be a sufficient answer against the exercise of his power that no appeal had been taken to him and therefore he was without authority in the matter."

We have made these somewhat extensive quotations from prior decisions in order to show the rulings of this court since the act of 1836 in favor of the power of the general officers of the Land Department to review and correct the action of the subordinate officials in all matters relating to the sale and disposal of public lands. These cases might be supplemented by others in which, with more or less fulness of statement, the same affirmations have been made.

Similar decisions, some upon the precise question here involved, have been made in several state courts. See, among others, the following cases: *Bellows* v. *Todd*, 34 Iowa, 18; *Morton* v. *Green*, 2 Nebraska, 441; *Hestres, Administrator* v. *Brennan*, 50 California, 211; *Figg* v. *Hensley*, 52 California, 299; *Randall* v. *Edert*, 7 Minnesota, 450; *Gray* v. *Stockton*, 8 Minnesota, 529; *Judd* v. *Randall*, 36 Minnesota, 12; *Darcy*

v. *McCarthy*, 35 Kansas, 722 ; *Gray* v. *McCance*, 14 Illinois, 343; *Aldrich* v. *Aldrich*, 37 Illinois, 32; *McLane* v. *Bovee*, 35 Wisconsin, 27; *Vantongeren* v. *Heffernan*, 5 Dakota Ter. 180.

Again, one of the instructions issued by the Land Department to the registers and receivers, and which has been in force for half a century, is this: " Final proof in preëmption cases must be made to the satisfaction of the register and receiver, whose decision, as in other cases, is subject to examination and review by this office." And all these years the practice has been to exercise the power of review thus claimed. 1 Copp's Land Owner, 123, 124; 11 Copp's Land Owner, 181 ; 13 Copp's Land Owner, 13. While, of course, no practice of a department can nullify an act of Congress, yet such practice, if uniform and long continued, is a matter worthy of consideration in determining its construction. *Heath* v. *Wallace*, 138 U. S. 573, 582. So many rights, it may be presumed, have been created in reliance upon it that the courts will hesitate to decide that the construction thus practically asserted is erroneous, and so overthrow all the titles depending thereon.

Of course, this power of reviewing and setting aside the action of the local land officers is, as was decided in *Cornelius* v. *Kessel*, 128 U. S. 456, not arbitrary and unlimited. It does not prevent judicial inquiry. *Johnson* v. *Towsley*, 13 Wall. 72. The party who makes proofs, which are accepted by the local land officers, and pays his money for the land, has acquired an interest of which he cannot be arbitrarily dispossessed. His interest is subject to state taxation. *Carroll* v. *Safford*, 3 How. 441 ; *Witherspoon* v. *Duncan*, 4 Wall. 210. The government holds the legal title in trust for him, and he may not be dispossessed of his equitable rights without due process of law. Due process in such case implies notice and a hearing. But this does not require that the hearing must be in the courts, or forbid an inquiry and determination in the Land Department.

While the departmental practice and judicial decisions unite to compel the construction thus placed upon the statutory provisions, we may add that if the question were entirely

new we should be led to the same conclusion. If the section declaring that proof in respect to settlement and improvement should be made to the satisfaction of the local land officers, stood alone, as it formerly did, it might well be contended that as the local land officers were the ones to whose determination the question of settlement and improvement was confided, and as there was no statute granting any review of their determinations, they must be taken as final. It was, of course, competent for Congress to give finality to their determinations, and having given them the power to determine, and made no provision for any review, it naturally followed that their judgment was final. It is not strange that the mischiefs liable to flow from such a provision attracted the attention of Congress. Great inequalities in the administration of the Land Department of the United States would inevitably ensue if the final determination of matters connected with the sale and disposal of the public lands was left to a multitude of local land officers. The character and amount of testimony which would be held sufficient in one State and by one set of officers would be held insufficient in another State and by another set. Local influences might help or hinder individuals in acquiring titles to the public lands. Obviously, in order that equal justice might be administered, it was necessary that there should be a superintendence of all the actions of the local land officers and all the proceedings in the local land offices. And so it was that Congress made the several provisions which we have noticed for control by the general officers of the Land Department of proceedings for the survey, sale, and disposal of the public lands. Indeed, the language of section 2263, upon which alone rests the contention of the plaintiff, is itself suggestive of some control. While it says that " proof of the settlement and improvement thereby required shall be made to the satisfaction of the register and receiver of the land district," it also provides that such proof shall be made "agreeably to such rules as may be prescribed by the Secretary of the Interior." It may be argued that this only contemplates that the Secretary shall prescribe the mode of procedure, the rules

by which testimony shall be received, and does not necessarily interfere with the provision that the proof shall be satisfactory to the register and receiver, or grant to the superior officer a right to revise their determination; and such was the construction placed on the similar section prior to the legislation of 1836. Nevertheless the section contemplates that the proceedings shall not be wholly withdrawn from the control of the Secretary, and implies that they are but part and parcel of the general administrative system for the disposal of the public lands. While it is within the discretion of Congress to segregate any particular step in the proceedings for the disposal of the public lands from the scope of the general system, and place it outside of and beyond any supervising control of the higher officers, yet the courts should be satisfied that the language indicates an intention on the part of Congress so to do before any such break in the harmony of the system is adjudged. In this connection reference may be made to section 2273, which provides for a contest between two parties claiming the right of preëmption. Such a contest is to be heard, in the first instance, by the local land officers, subject by express declaration to the right of appeal to the Commissioner, and subsequently to the Secretary of the Interior. In other words, when any individual contests the validity of the action of the local land officers there is confessedly the right of appeal. Can it be that if the government is the only party wronged by their action there is no review except by the slow and expensive process of a suit in the courts?

Some reliance is placed on the case of *Butterworth* v. *Hoe,* 112 U. S. 50, in which it was held that the Secretary of the Interior has no power to revise the action of the Commissioner of Patents in awarding to an applicant priority of invention and adjudging him entitled to a patent. But an examination of the opinion shows that it throws very little light upon this question. Indeed, it is said therein that " each case must be governed by its own text, upon a full view of all the statutory provisions intended to express the meaning of the legislature; " and the lack of power in the Secretary to revise

the action of the Commissioner of Patents in the particular matter was denied by reason of the various provisions of the statute applicable thereto, among others one providing for an appeal from the decision of the Commissioner to the Supreme Court of the District of Columbia, whose decision, as expressly declared, (sec. 4914, Rev. Stat.,) "shall govern the further proceedings in the case." This special provision for an appeal to a judicial tribunal, with a declaration as to the effect of the decision of such tribunal, was held to be conclusive so far as respects proceedings in the department. But the difference between the two cases is obvious. There is no special provision for an appeal from the decision of the local land officers as to the matter of·settlement and improvement; nothing, therefore, to take the case out of the general grant of power to the Commissioner of the General Land Office and the Secretary of the Interior to control all matters in respect to the sale and disposal of the public lands.

It is unnecessary to pursue this discussion further. The conclusions of the Supreme Court of the State of Washington were correct, and the judgments are

*Affirmed.*