Alonzo A. ADAMS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17902.

United States Court of Appeals
Ninth Circuit.

June 10, 1963.

Milton Wichner, Hollywood, Cal., for appellant.

Ramsey Clark, Asst. Atty. Gen., S. Billingsley Hill and Edmund B. Clark, Attorneys, Department of Justice, Washington, D. C., Francis C. Whelan, U. S. Atty., and Melvin C. Blum, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge.

In the summary judgment here under review it is declared that the United States is the sole owner of certain National Forest lands, to the exclusion of any asserted mining claims or locations of Alonzo A. Adams. Under the judgment Adams is enjoined from using, occupying or maintaining structures on these lands, or from entering upon the lands for the purpose of claiming or asserting the existence of mining claims or locations. Two counterclaims, under which affirmative relief was sought, were dismissed.

On appeal, Adams presents three lines of argument: (1) summary judgment was not a proper method of disposing of the case; (2) the administrative proceedings leading to the agency determination which the court accepted were not conducted in accordance with the Due Process Clause of the Fifth Amendment, and were violative of the Administrative Procedure Act and the rules and practices of the agency; and (3) the determination in the administrative proceedings was arbitrary and capricious, constituted an abuse of discretion, and was not in accordance with law, was made without or in excess of statutory jurisdiction or authority, and was not supported by substantial evidence.

The case involves asserted mineral rights in four hundred and fifty acres of land located in Charlie Canyon, Angeles National Forest, Los Angeles County, California. The land in question is owned by the United States in fee, having been acquired from Mexico on February 2, 1848, by Article V of the Treaty of Guadalupe Hidalgo, 9 Stat. 922, 926.

Adams, in partnership with one McRae, began exploring, developing and working placer gold deposits in Charlie Canyon in 1929. McRae died in February, 1937. Adams succeeded to McRae's interest and continued his somewhat sporadic operations in the area, continuing to make some improvements. On April 8, 1952 and January 28, 1953, Adams filed applications for the issuance of mineral patents on eight placer mining claims which he asserted to exist in Charlie Canyon. These applications were based upon the mining laws of the United States, particularly upon 30 U. S.C. § 29, which provides for the issuance of mineral patents.

The issuance of mineral patents was contested on May 27, 1953 by the United States at the instance of the United States Forest Service.[1] The reasons given for the contest were that no bona fide discovery of mineral had been made on any of the claims; the land comprising all of the claims was non-mineral in character; and the applications for the mineral patents had not been made in good faith for mining purposes. In addition it was alleged that the requisite five hundred dollars in development work had not been expended on or for the benefit of five of the claimed locations.

After Adams had been given notice of the contest by the United States Forest Service, a hearing was held on January 27 and 28, 1954. In a decision dated October 13, 1954, Paul Witmer, Manager of the Los Angeles Land Office, concluded that "the Government's charge is fully sustained" and recommended that the application for patent be denied and the mineral entry cancelled.

This decision was appealed to the Director, Bureau of Land Management. The decision of the Los Angeles Land Office Manager was affirmed by the Acting Director on April 2, 1956, on the grounds that the land comprising all eight of the claims was non-mineral in character and that no bona fide discovery

---

1. Such a contest may, as it did here, bring into question not only whether the application for a patent should be granted, but also the status of the claim—whether it is valid or is wanting in essential elements of validity, and whether it entitles the claimant to the use of the land as against the public and the Government. If, in such a contest proceeding, a claim is found invalid, the agency may declare the claim null and void. Cameron v. United States, 252 U.S. 450, 459–460, 40 S.Ct. 410, 64 L.Ed. 659.

864

of mineral had been made on any of the claims. In addition to rejecting the mineral patent applications as recommended by the Los Angeles Land Office Manager, the Acting Director also declared Adams' claims null and void. This ruling was considered necessary in view of the findings that the land was non-mineral in character and that bona fide discoveries had not been made on the claims.

Adams took a further appeal to the Secretary of the Interior. Prior to that hearing, Adams made a motion to set aside the prior decisions and remand the contests for rehearing, contending that the proceedings had up to then did not comply with the pertinent provisions of the Administrative Procedure Act, 5 U.S.C. § 1001 et seq. This motion was denied by the Deputy Solicitor on June 3, 1957. United States v. Alonzo A. Adams et al., 64 I.D. 221.

On the merits, the decision of the Acting Director of the Bureau of Land Management was affirmed for the Secretary by the Deputy Solicitor, in a decision dated July 1, 1957. It was held, in effect, that under the evidence the mineral content of the lands embraced within the claims was not such as to constitute the lands a valuable mineral deposit entitling Adams, as the discoverer, to patents to his mineral claims thereon.

Following the Secretary's decision, the United States Forest Service, through District Ranger Berriman, sent to Adams a letter dated September 20, 1957. In it, Adams was requested to remove certain cabins and structures which he, his agents and his employees maintained on the land in question. The letter further stated that if the cabins and struc-

tures were not removed by January 1, 1958, they would be deemed abandoned to and become the property of the United States.

Adams did not comply with the request stated in the letter of September 20, 1957. He continues to maintain, use and occupy the buildings to the present time, asserting that they are reasonably necessary to the operation of what he contends are valid, bona fide, subsisting mineral locations.

On October 28, 1957, Adams brought a civil suit in the United States District Court for the Southern District of California, Central Division, seeking to restrain and enjoin District Ranger Berriman from interfering with his possession of the land and buildings and other structures situated on it. The prayer for this relief was predicated upon the alleged invalidity of the preceding administrative proceedings and the impropriety of the Secretary's decision. The suit was, in effect, one for judicial review of the administrative action.

This suit was dismissed by the district court for lack of jurisdiction. On appeal this court reversed, it being held that the agency action came within the purview of the Administrative Procedure Act, 5 U.S.C. §§ 1001–1011, and so was subject to judicial review. Adams v. Witmer, 9 Cir., 271 F.2d 29. This court ruled that Adams had waived, by failing to enter a timely objection, the procedural irregularities of which he complained. It was further held, however, that upon remand the record, or such portion of it as any party might cite, should be reviewed for defects of a nonprocedural nature.[2]

2. The standards of review which this court stated should guide the district court on remand are those set out in section 10(e) (B) (1), (3) and (5) of the Administrative Procedure Act, 5 U.S.C. § 1009(e) (B) (1), (3) and (5), the court stating (271 F.2d at page 37):

" * * * Thus § 10(e) provides that the court, on review shall '(B) hold unlawful and set aside agency action, findings and conclusions found to be (1) ar-

bitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; * * * (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; * * * (5) unsupported by substantial evidence in any case subject to the requirements of sections 7 and 8 of this title or otherwise reviewed on the record of an agency hearing provided by statute; * * * In making the foregoing determinations

After the cause in Adams v. Witmer had been remanded and while it was pending in the district court, the Government commenced the present suit. Adams answered, denying some of the Government's factual allegations and denying the validity of the Secretary's decision upon which the Government's claim for relief is based. By way of counterclaims, Adams affirmatively sought a *de novo* judicial determination as to the validity of his claims and his right to mineral patents or, in the alternative, a review of the administrative proceedings and an adjudication that they were invalid, together with a declaration that he is entitled to the continued use and occupancy of the mining claims and to the issuance of mineral patents as applied for.

On July 20, 1961, the cause in Adams v. Witmer was dismissed without prejudice, "it appearing that all of the issues which are raised or could be raised in [Adams v. Witmer] * * * are included within the issues * * * [of the present case] * * *." The Government thereafter moved for summary judgment in its favor in the case now on appeal and, in support of the motion, filed the entire administrative record. Adams resisted the motion and supported his opposition with an affidavit stating the substance of what his testimony would be if a trial were held. A list of proposed exhibits was also lodged with the court by Adams. The granting of summary judgment responsive to this motion led to the appeal now before us.

■ Contending that the district court erred in disposing of the case by summary judgment, appellant first argues that the motion on which the court acted was in reality one for judgment on the pleadings under Rule 12(c), Federal Rules of Civil Procedure, rather than for a summary judgment under Rule 56 of those rules.

Appellant is mistaken. The Government did not move for "judgment on the pleadings," nor did it rely exclusively upon the pleadings to support the motion. It moved for "summary judgment" and based its motion not only on the pleadings but also on "the exhibits lodged and filed herein." The exhibits so lodged consisted of the entire administrative record. The motion was therefore one for a summary judgment under Rule 56(b) and (c), Federal Rules of Civil Procedure.[3]

■ Appellant next argues that the administrative record which the Government lodged with the court was not properly presented for consideration by the court because it was not identified by affidavit.

No objection of this kind was made in the district court and it may not be advanced for the first time in this court.

Appellant contends that it was improper to dispose of the case on motion for summary judgment because the pleadings presented genuine issues as to material facts. This has reference to Rule 56(c), Federal Rules of Civil Procedure, which precludes the granting of summary judgment if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is such an issue.

■ In determining whether any genuine issue as to a material fact was presented in the district court consideration must be given to each item of relief which was granted the Government, or was sought by appellant, and the issues presented thereunder.

One item of relief granted the Government was a judicial declaration that the United States is the sole owner of all right, title and interest in the lands in question, to the exclusion of any right, title or interest of Adams in any asserted mining claims or mining locations.

the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error.' " (Footnote 15 omitted.)

3. In view of the second sentence of Rule 12(c), Federal Rules of Civil Procedure, this would have been true even if the motion had been denominated as one for judgment on the pleadings.

In seeking such a declaration the Government alleged in its amended complaint that it had acquired ownership of the lands by Article V of the Treaty of Guadalupe Hidalgo between the United States and Mexico, entered into on February 2, 1848, 9 Stat. 922, 926; the Government has continuously held this land from that time subject only to any right or interest Adams may have acquired therein; the only rights or interests Adams claims in these lands are asserted mining claims and mining locations on the land, the right to have mineral patents issued thereon, and the right to use, occupy and deal with such lands in the manner of one having such claims, locations or patents; in mineral patent proceedings before the Department of the Interior, it was administratively determined that there had not been discoveries of minerals sufficient to support the mining locations claimed by Adams, as a result of which the applications were denied and the claims were declared to be null and void; and such administrative determination and decision was and is final, binding and conclusive between the parties.

In his amended answer, Adams made certain general denials which theoretically put in issue many of the allegations of the complaint concerning the history of the past proceedings. The administrative record lodged with the court, however, substantiates each such allegation. The purpose of such general denials must therefore have been to challenge the legal effect of such proceedings, thereby presenting only a question of law. The answer also contains express allegations denying that the administrative decision is final, binding or conclusive. These also presented only a question of law.

In his first affirmative defense and counterclaim, Adams alleged that he is now the owner of and entitled to own and possess the claims and locations in ques-

tion, and sought an adjudication to that effect and a decree quieting his title therein. The apparent purpose of this affirmative defense and counterclaim was to obtain a *de novo* judicial determination as to the validity of his claims against the described public lands.

If Adams was entitled to a *de novo* determination of this kind, the first affirmative defense and counterclaim unquestionably posed questions of fact which would have made declaratory relief in favor of the Government, by summary judgment, impermissible. But the district court properly determined, as a matter of law, that this means of countering the Government's prayer for declaratory relief is not available to Adams.

■ The Department of the Interior has been granted plenary authority over the administration of public lands, including mineral lands. It is that agency which has been entrusted with the function of making the initial determination as to the validity of claims against such lands, such determination being subject to judicial review.[4] It follows that no claim was stated upon which relief by way of a *de novo* judicial determination could be granted. The first affirmative defense and counterclaim therefore gave rise to no questions of fact affecting the right of the Government to obtain the declaratory relief which the judgment affords.

In his second and final affirmative defense and counterclaim, Adams renewed his allegations of ownership and rights in the claims and locations, recited the history of the administrative proceedings; and alleged, on numerous grounds, that the administrative decisions, findings, conclusions, orders and actions are invalid, void, unconscionable and contrary to law. The apparent purpose of this affirmative defense and counterclaim was to obtain a judicial review of the described agency action, but possibly in such way as to enable him to adduce

---

4. See Best v. Humboldt Placer Mining Company, 371 U.S. 334, 83 S.Ct. 379, 9 L. Ed.2d 350; Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659; 1 American Law of Mining § 4.60, page 695 (1960).

evidence additional to that contained in the agency record.

Had the judgment now on review been entered in Adams v. Witmer, 9 Cir., 271 F.2d 29, following the remand by this court, the scope of review of the agency action specified in that decision and based upon section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 1009(e),[5] would have been binding upon the district court. Under that decision and that statutory provision such a review would have been confined to the whole agency record and additional evidence would not have been admissible in court.

■ In our opinion this new case, like its predecessor, is essentially one to review the agency decision. The review provisions of the Administrative Procedure Act are therefore as applicable here as they were in the earlier case. But if this new case is not to be regarded as a review proceeding amenable to the Administrative Procedure Act, it is at least one in which the district court has no broader reviewing function that it would have under that Act. Indeed, in a court proceeding other than a direct review, the district court function would probably be more limited. See, for example, Cameron v. United States, 252 U.S. 450, 464, 40 S.Ct. 410, 64 L.Ed. 659. Since, however, the previous direct-review litigation involving the agency decision in question was dismissed "without prejudice," fairness requires that, whether or not regarded as a direct review, Adams be accorded as full a review of the agency decision in this new court proceeding as would have been possible in Adams v. Witmer.

■ Neither this circumstance nor any other consideration which has been brought to our attention, however, entitled Adams to adduce evidence extrinsic to the agency record in an effort to undermine the agency decisions. It follows that all questions raised by the second affirmative defense and counterclaim, as in the case of the other pleadings in the case, concerning the validity of Adams' claims and the judicial declaration regarding them sought by the Government, involve only issues of law properly subject to disposition by summary judgment.

■ The remaining items of relief obtained by the Government, except for one formal provision dismissing the counterclaims to be discussed below, were injunctive in character. Adams was enjoined from using, occupying or maintaining any cabins or structures on the public lands in question, or from entering upon, or being upon these lands for the purpose of (1) using, occupying or maintaining any cabins or structures on said lands, (2) claiming or asserting the existence of any mining claims or mining locations on these lands or that the lands are mineral in character, (3) operating or using any claimed mining locations on these lands, or (4) doing any acts or things on these lands related to or claimed to be related to any asserted mining claims or locations or any claim or assertion that the lands are mineral in character.

The judgment also enjoins Adams from interfering with, impeding, obstructing or resisting the United States, its officers or employees, departments or agencies in any acts or things done or to be done in the exercise of the United States' complete control and dominion over the lands, upon condition that Adams have ninety days in which to remove or otherwise dispose of any cabins, structures or any other of his property on these lands. In addition, Adams is enjoined from maintaining or prosecuting any legal action, suit, writ or process relating to, or concerning any mining claims on, or assertions by Adams of any right, title or interest in these lands, against the United States or any of its departments, agencies, officers or employees, "and upon the refund to the defendant of the price paid by the defendant to the plaintiff."

---

5. See note 2, above.

In support of its prayer for this injunctive relief the Government alleged, in its amended complaint, in addition to the allegations concerning its exclusive ownership and the administrative rejection of Adams' claims, that: (1) following the decision of the Secretary of the Interior in the administrative proceedings, the Forest Service, on September 20, 1957 requested Adams to remove certain cabins and structures from the affected lands, with the alternative stated that if they were not removed by January 1, 1958 the United States would deem them to be abandoned, and they would become the property of the United States; (2) Adams has at all times failed and refused to comply with this request, but he and his agents and employees have continued to use, occupy and maintain the cabins and structures and intend and threaten to, and will unless restrained, continue to do so in the future upon the asserted ground that they are reasonably necessary and incidental to the operation and existence of the described mining locations and claims.

The Government also alleged that on October 28, 1957 Adams had filed the civil suit which later came to this court as Adams v. Witmer; that, unless restrained, Adams will continue to prosecute that suit; and that he and his agents, employees, attorneys and others, have continued to the present time to claim and assert that the described mining claims are bona fide, lawful and valid, and threaten and intend to and will unless restrained continue to do so in the future. It was further alleged in the complaint that by such trespasses and by the pendency and prosecution of the described civil suit, the United States and its officers and employees will be, unless an injunction is entered, obstructed, resisted, impeded and interfered with in the exercise of the Government's lawful right, power and authority, and in the performance of its lawful duty with respect to these lands.

In his amended answer, Adams first denied generally the allegations concerning the request, dated September 20, 1957, to remove the cabins and structures. However, he then affirmatively alleged the making of such request, adding only that he had later been advised that no action would be taken with reference to the cabins and structures, or Adams' use and possession thereof, until the termination of litigation concerning the matter. In the answer Adams admitted that he has not removed the cabins and structures, and has continued to use and occupy them; and that he intends to and will continue to do so in the future "upon the ground that the same are reasonable, necessary and incidental to the operation and existence of the mining locations and claims."

Adams also admitted in his answer that he had filed the described civil suit, but further alleged that it had been dismissed without prejudice. He also admitted that he does now, and intends to in the future, claim and assert that the mining locations are bona fide, lawful and valid. By general denial he denied the other allegations of the complaint concerning his intended future actions and the deleterious effect this would have on Government administration of the lands in question.

It will be noted that, under the undisputed facts established by the described pleadings, Adams is occupying and maintaining the cabins and structures in question, and intends to occupy and maintain them in the future, only upon the ground that they are reasonable, necessary and incidental to the operation of the mining locations and claims involved in this litigation. He did not allege that he needed, and is entitled to maintain, these buildings in connection with any present or proposed future search for new mineral locations. Nor did he allege any present effort, or intention to exert future effort, to search the public lands in question for new mineral locations on the basis of which new claims might be asserted.

Considered in this light, the described pleadings presented no question of fact or law concerning any right Adams may

have, along with all other persons, to search for mineral locations on the public lands in the future. Nor are the injunctive provisions of the judgment under review to be regarded as restraining Adams with respect to any future prospecting activities of a kind, if any, in which other persons may lawfully engage upon the lands in question. The only issues presented and the only restraints imposed were with reference to Adams' present and threatened future action with respect to the specific mineral claims involved in this litigation.

■ These issues, and the granting of injunctive relief upon the consideration of those issues, did not involve any question of fact. Adams' present and intended future use of the structures for the purpose of asserting and maintaining those specific mineral claims, and his present and intended future intention to assert his claimed rights thereunder were admitted by him. No question of fact, or consideration of equity or public policy, is involved in determining whether one, whose mineral locations and claims have been declared invalid, is nevertheless entitled to continue use and occupancy of such lands in purported exercise of the invalidated rights.

This is likewise true concerning the determination of whether one whose currently-asserted mineral locations and claims are invalid, is nevertheless entitled to interfere with Government administration of the public lands in continued assertion of the invalid locations and claims. As for the abandonment of present structures, and removal thereof by the Government, the only such question or consideration which could be involved would be as to Adams' right to remove them, and he was accorded that right.

With regard to the restraint against future litigation we regard the general denials contained in the amended answer as raising a question of fact as to whether there was present or threatened abuse of judicial process warranting such relief. As to this particular injunctive provision, incorporated in the fourth decretal paragraph of the judgment, we therefore hold that summary judgment was improper.

■ If this particular item of relief accorded the Government were to be regarded as a substantial part of the relief which the Government sought in this action, the ruling just stated would require a remand of the case for trial of that issue.

It appears to us, however, that this item of relief, restraining Adams from engaging in future litigation, is probably of secondary concern to the Government. The one court action referred to in the amended complaint has since been terminated. That pleading contains no factual allegations tending to show that Adams has abused, is abusing, or threatens to abuse, judicial process in the prosecution of his asserted rights and interests under the rejected mineral claims and locations.

We therefore conclude that the proper disposition of this matter is to order that particular provision stricken from the judgment rather than to remand the cause for a trial of the issue.

Turning now to the items of relief sought by Adams, a lengthy discussion is not required. Adams argues that in his counterclaims he seeks affirmative relief in the nature of specific performance, quieting of title, and a declaratory adjudication. But the counterclaims, which have been analyzed above, state no basis for relief other than the negative of the Government's theories. It follows that the determination of the Government's claims for adjudicatory and injunctive relief which, except in one respect, was properly made by summary judgment, is also dispositive of the claims asserted in Adams' counterclaims.

We conclude that, except with regard to the provision of the judgment enjoining Adams from maintaining or prosecuting future litigation, the pleadings and other papers before the district court made it possible to decide this case with-

out reaching any genuine issue as to a material fact. Disposition by summary judgment, except for the indicated item of relief was therefore appropriate.

Appellant bases another general line of attack against the judgment on procedural grounds. He contends that in various respects, the administrative proceedings were not conducted in accordance with the Due Process Clause of the Fifth Amendment, the provisions of the Administrative Procedure Act, and the established rules and practices of the Secretary of the Interior.

Under the precise holding of this court in Adams v. Witmer, 9 Cir., 271 F.2d 29, and by virtue of the general principles stated and applied in that decision, these contentions were properly rejected by the district court.

In his third and final series of contentions, appellant argues that in several respects going to the merits of the case, the administrative decision was invalid and should have been set aside by the trial court.

One of the arguments advanced under this heading is that the agency decision required a demonstration on the part of Adams that the deposits could be worked at a profit. He cites authority for the proposition that as long as the mineral involved has intrinsic value it is not necessary that it be minable at a profit.

▉▉▉ Under the mining laws of the United States, the discovery of a "valuable" mineral deposit within the limits of each claim is essential to a valid location.[6] But value, in the sense of proved ability to mine the deposit at a profit need not be shown. The showing which must be made with respect to value in order to establish a valid claim, as stated in Castle v. Womble, 19 L.D. 455, 457, and thereafter given recognition by the Supreme Court in Chrisman v. Miller, 197 U.S. 313, 322, 25 S.Ct. 468, 470, 49 L.Ed. 770, is as follows:

"Where minerals have been found and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine, the requirements of the statute have been met. * * *"

▉▉▉ In applying this test evidence as to the cost of extracting the mineral is relevant and evidence of that character was submitted by Adams as well as the Government. The agency properly considered this evidence, not to ascertain whether assured profits were presently demonstrated, but whether, under the circumstances, a person of ordinary prudence would expend substantial sums in the expectation that a profitable mine might be developed. The agency did not, in this regard, apply an improper standard.[7]

Appellant argues that the agency erroneously determined that an application for a mineral patent may be rejected and the mining claim declared null and void where it is not shown as a present fact that the claim is valuable for minerals, although the claim may formerly have been valuable for minerals. Because of this, appellant contends, the trial court should have set aside the agency decision.

Most of the testimony concerning the value of the mineral deposits was based upon samplings made in preparation for the hearings held in 1954. Adams, however, also testified as to the value of these deposits prior to 1937. This latter testimony was not referred to in the initial decision by the Manager of the Los Angeles Land Office and was apparently not accorded any evidentiary value by that official.

---

6. See 30 U.S.C. §§ 22, 29, 35; Foster v. Seaton, 106 U.S.App.D.C. 253, 271 F.2d 836, 838.

7. We regard as frivolous, appellant's contention that since the Deputy Solicitor referred to a "prudent person" instead of "a person of ordinary prudence," as the rule is stated in Castle v. Womble, the proper standard was not applied.

Commenting upon this in his decision on review, rendered on April 2, 1956, the Acting Director, Bureau of Land Management said:

" * * * The rejection of this testimony appears proper since the statements are unsupported by other evidence and the receipts referred to were not identified sufficiently to establish that the gold they relate to was recovered from the claims here involved. It is noted Mr. Adams stated records of values recovered from the claims and records of samplings were lost when his partner and predecessor in interest died in 1936, and that his testimony on this issue was based largely upon his recollection. * * * "

In the decision of the Deputy Solicitor, rendered on July 1, 1957, Adams' testimony was reviewed and several factors tending to undermine its credibility were mentioned.[8] The Deputy Solicitor then stated:

"The contestees urge that more weight should have been placed upon the testimony of Adams as to the values recovered on the various claims, particularly Midget No. 1. Adams' figures were based upon samples taken or operations conducted prior to 1937. The contestees' expert did not produce any values from his sampling which support Adams' statements. It is not sufficient that at one time there may have been a valuable discovery made on a mining claim, the claim must be mineral in character and valuable for its mineral content at the time the application for a patent is made. United States v. Margherita Logomarcini, 60 I.D. 371 (1949). This is not to imply that a valuable discovery was made prior to 1937."

It is therefore apparent that two independent reasons motivated the agency in declining to accord Adams' testimony any evidentiary value. The first of these was that such testimony, based upon recollections of events long past, and undermined by his own lack of success and representations to the President, was not credible. This reason was unassailable in the district court and is unassailable here. Standing alone it is sufficient to support the agency's treatment of Adams' evidence.

But the second reason for disregarding Adams' testimony, namely, that it did not relate to present value, is also sound. Before a mineral patent can be issued it must be shown as a present fact, i. e., at the time of the application for patent, that the claim is valuable for minerals. United States v. Margherita Logomarcini, 60 I.D. 371, 373; 1 American Law of Mining § 4.27, page 647 (1960).[9]

8. On cross-examination, Adams said he had spent three thousand dollars a year since 1929 on the claims, but had not had any return for these expenditures. He admitted that, on December 9, 1949 he wrote a letter to President Truman, stating that "We are convinced that the above described property is futile for profitable mining, either for placer or lode." Adams explained that he had written this letter as a result of bad advice from a neighboring landowner and real estate subdivider.

9. The cases cited by appellant with regard to this point are inapposite. In Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659, the question was whether a particular tract, included within a monument reserve established on January 11, 1908, was covered by a saving clause with respect to any valid mining claim theretofore acquired. The nature of the problem made it necessary to determine whether there was a valid claim as of a particular date in the past.

This was likewise true with regard to Wyoming v. United States, 255 U.S. 489, 41 S.Ct. 393, 65 L.Ed. 742. The particular problem dealt with in that case was whether a state's selection of public lands, then not known to be mineral, in lieu of lands included within a public reservation, could be set aside by a determination, based on later studies or events, that the selected lands were in fact, mineral. The Supreme Court held that the validity of the selection was to be judged by conditions as they existed when the state relinquished the originally-designated tract in the forest reserve and selected the other tract in its stead.

**The** next contention advanced by appellant is that, having paid the full purchase price for his mining claims, Adams acquired a vested right in the claims and is entitled to a patent.

Before the contests were instituted by the Land Office upon the request of the Department of Agriculture, Adams had completed his proofs, had paid his purchase price and had received receipts from the Bureau of Land Management. The property was placed on the tax rolls of Los Angeles County and Adams paid taxes thereon. The "Final Certificate of Mineral Entry" which was issued to Adams by the Manager of the District Land Office upon the making of these payments, contains this notation:

"A duplicate of this Certificate is issued to the claimant as notice of the acceptance of the proof and payment, and of the allowance of the entry by the Register *subject to approval by the Commissioner of the General Land Office.*" (Emphasis supplied.)

The contention that acceptance of payment by the Government vests legal title in the claimant, entitling him to a patent as against an assertion by the Government that the claim is invalid, was expressly rejected in Cameron v. United States, 252 U.S. 450, 460–461, 40 S.Ct. 410, 412–413, 64 L.Ed. 659.[10] The cases relied upon by appellant as stating a contrary view are, with the exception of Wilbur v. United States, ex rel. Krushnic, 280 U.S. 306, 50 S.Ct. 103, 74 L.Ed. 445, and Wyoming v. United States, 255 U.S. 489, 41 S.Ct. 393, 65 L.Ed. 742, earlier than Cameron, and in any event do not support his position.[11]

10. The court said, in Cameron, 252 U.S. at pages 460–461, 40 S.Ct. at pages 412–413:

"Of course, the land department has no power to strike down any claim arbitrarily, but so long as the legal title remains in the Government it does have power, after proper notice and upon adequate hearing, to determine whether the claim is valid and, if it be found invalid, to declare it null and void. This is well illustrated in Orchard v. Alexander, 157 U.S. 372, 383 [15 S.Ct. 635, 39 L.Ed. 737], where in giving effect to a decision of the Secretary of the Interior canceling a preëmption claim theretofore passed to cash entry, but still unpatented, this court said: 'The party who makes proofs, which are accepted by the local land officers, and pays his money for the land, has acquired an interest of which he cannot be arbitrarily dispossessed. His interest is subject to state taxation. Carroll v. Safford, 3 How. 441 [11 L.Ed. 671]; Witherspoon v. Duncan, 4 Wall. 210 [18 L.Ed. 339]. The government holds the legal title in trust for him, and he may not be dispossessed of his equitable rights without due process of law. Due process in such case implies notice and a hearing. But this does not require that the hearing must be in the courts, or forbid an inquiry and determination in the Land Department.'"

11. In Ballinger v. United States ex rel. Frost, 216 U.S. 240, 30 S.Ct. 338, 54 L.Ed. 464, mineral lands and patents thereon were not involved. The issue in litigation was with regard to the rights to a patent to selected Indian allotment lands for which allotment certificates had been issued under a statute which provided that such certificates "shall be conclusive evidence of the right of any allottee to the tract of land described therein." Parsons v. Venzke, 164 U.S. 89, 17 S.Ct. 27, 41 L.Ed. 360, and Orchard v. Alexander, 157 U.S. 372, 15 S.Ct. 635, 39 L.Ed. 737, were both cited in Cameron v. United States, 252 U.S. 450, 461, 40 S.Ct. 410, 64 L.Ed. 659, as authority for the rule of that case.

In Cornelius v. Kessel, 128 U.S. 456, 9 S.Ct. 122, 32 L.Ed. 482, an entry on non-mineral lands was cancelled by the General Land Office without notice to the entryman and without lawful reason. The Court held that under these circumstances the later conveyance of the land by the Government to others was without legal effect. The Court specifically held that the General Land Office would have been authorized to annul the entry if the land was not subject to entry, or the parties do not possess the qualifications required, or have previously entered all that the law permits. In Simmons v. Wagner, 101 U.S. 260, 25 L.Ed. 910, it was held that a tract of public land which has been sold by the proper officer of the United States, and the purchase-money therefor paid, is not subject to entry by another while the sale continues in force.

Wilbur does not undermine Cameron. It was there held only that the Government could not declare null and void a mineral claim upon which the claimant had obtained a final receiver's receipt, on the ground that assessment labor for a particular year had not been performed. The Court ruled that the failure to perform such labor does not *ipso facto* forfeit the claim, but only renders it subject to relocation. The power of the Government to declare a claim null and void for the reasons involved in the case before us was not discussed. Wyoming, discussed in note 9, had to do with the validity of a state's selection of non-mineral lands in lieu of public school lands which had been included in a national forest. That decision in no sense impairs the ruling in Cameron referred to above.

■■■ Appellant argues that the contests were directed only against the validity of the entry, not against the validity of the mining claims, and there existed no power to nullify the mining claims without proper notice and an adequate hearing on the issue.

It is true that the decision of the Manager recommended only that the application for patent be denied and the mineral entry be cancelled whereas, on review, the Director also declared the claims null and void. The latter decision was sustained by the Secretary, and the Secretary's decision was upheld by the trial court.

The charges of which Adams had notice in the contest proceedings included the grounds upon which the claims were declared to be null and void, namely, lack of valid discovery and non-mineral character of the land. He was specifically advised that if the charges were found to be true and material his "entry or claim" would be considered "for rejection or cancellation." The fact that the initial decision of the Manager did not grant the Government all of the relief which substantiation of these charges would warrant did not constitute a failure of notice or in any other way impair the authority of the Director and Secretary to grant such relief. Appellant makes no claim that the agency could not, where procedural requirements are met, declare such claims null and void upon a sufficient substantive showing.[12]

■■■ Appellant contends that the trial court erred in holding that the Secretary's determination is supported by substantial evidence.

Viewing the record as a whole, it is our opinion that the findings of the agency are supported by substantial evidence. Accordingly, the trial court did not err in so holding.

Since the agency findings are supported by substantial evidence and since the agency decision is not arbitrary, capricious or otherwise unlawful when tested by the questions which Adams was entitled to raise, and did raise, in this case, the trial court properly upheld the agency decision and granted the Government the declaratory and injunctive relief which it sought, with the exception of the one injunctive provision restraining future litigation. For the reasons already indicated, this made necessary and appropriate the dismissal of appellant's cross complaints.

Other contentions advanced by appellant have been considered but, in our view, are without merit.

The cause is remanded with directions to modify the judgment by deleting therefrom the fourth decretal paragraph whereby Adams was restrained from engaging in future litigation concerning these claims. In all other respects the judgment is affirmed. The parties will bear their respective costs on this appeal.

12. See note 1, above.