Sarah PENCE, Sophia Grindle, Annie Blue, Basille Jackson, Jack Koutchak, Angela Odinzoff, and on behalf of all other Alaska Natives similarly situated, Plaintiffs-Appellants,

v.

Cecil D. ANDRUS, Individually and as Secretary of the Interior and his agents the United States of America, Defendants-Appellees.

No. 77-2387.

United States Court of Appeals, Ninth Circuit.

Nov. 22, 1978.

Michael Frank, Anchorage, Alaska, for plaintiffs-appellants.

Charles E. Biblowit, Atty., Washington, D. C., for defendants-appellees.

Before WRIGHT, GOODWIN and ANDERSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

In *Pence v. Kleppe*, 529 F.2d 135 (9th Cir. 1976) (*Pence I*), this court ordered the Secretary of the Interior to adopt regulations governing the granting of allotments under the Alaska Native Land Allotment Act (ANLAA)[1] which would meet at least the minimum due process requirements outlined in the opinion.

---

1. May 17, 1906, 34 Stat. 197, as amended Aug. 2, 1956, Ch. 891, 70 Stat. 954: 43 U.S.C. §§ 270—1 to 270—3 (1970), repealed, but with a saving clause for applications pending on December 18, 1971, by P.L. 92–203, Dec. 18, 1971, 85 Stat. 710, 43 U.S.C. § 1617.

The Secretary approved the adoption of new procedures by the Interior Board of Land Appeals (IBLA), then moved for dismissal. Appellants, all members of a class of Native Alaskans claiming to be eligible for allotments under the ANLAA, protested that the regulations adopted do not comply with the *Pence I* requirements and petitioned to enjoin use of the new procedures.[2] They now appeal from the district court's orders denying them injunctive relief and granting partial summary judgment to the Secretary on the question whether the new regulations comply with due process.[3]

The district court judge found that appellants lacked standing to raise the question whether the new regulations comply with due process because they had not yet been subjected to those regulations and thus, had suffered no injury. He found, however, that the regulations satisfied the court's due process objections in *Pence I*. The judge then certified the questions of appellants' standing to challenge the new regulations and of the constitutionality of those regulations as suitable for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

We hold that appellants have standing to contest only whether the new procedures comply with the *Pence I* mandate. We find that the procedures do comply, therefore appellants' request for injunctive relief was properly denied and summary judgment for the Secretary on this issue must be affirmed.

## BACKGROUND

The ANLAA, now repealed, but with a saving clause for applications pending on December 19, 1971, provided that Alaska Natives may acquire title to designated Alaska lands. Section 270—1 of the ANLAA authorized the Secretary to allot up to 160 acres to qualified applicants "in his discretion and under such rules as he may prescribe." Section 270—3 required applicants to make "proof satisfactory to the Secretary . . . of substantially continuous use and occupancy of the land for a period of five years."[4]

In *Pence I*, the court described the procedures employed by the Bureau of Land Management (BLM), acting as agents for the Secretary, to implement the statute. 529 F.2d at 137–38. Once an application for an allotment was submitted to the BLM, the applicant was given 30 days notice that a field examination would be made to determine whether the requisite evidence of five year use and occupancy could be found.[5] The examination, made by helicopter, provided the basis for a preliminary finding by the BLM.

Although the applicant could supplement an initial negative finding with written evidence, there was no opportunity to present oral evidence to the BLM before a final decision issued. The unsuccessful applicant could then appeal in writing and request an oral factual hearing before an administrative law judge, but the granting of the

2. In appellants' Motion for Supplemental Relief, they sought not only to enjoin use of the new procedures, but also to require the Secretary to conduct rulemaking hearings to determine what fair hearing procedures will best comply with *Pence I* and to consult with counsel for appellants in developing appropriate procedures. They also requested that the IBLA panel which adopted the new procedures in *Donald Peters*, 26 I.B.L.A. 235, *On Reconsideration*, 83 I.D. 564, 28 I.B.L.A. 153 (1976), be held in contempt for interference with the district court order directing compliance with *Pence I*. The district court judge deemed this a motion for preliminary injunction and treated it as such.

3. The trial court judge denied summary judgment on the question whether the Secretary

complied with his own regulations in adopting the contest complaint procedures. He also denied the Secretary's request to decertify the class on that issue.

4. The five-year continuous use and occupancy provision was challenged in a case argued the same day as this one, *Eluska v. Kleppe [Eluska v. Andrus*, 587 F.2d 996] (9th Cir. 1978).

5. Seasonal use would suffice if it was "at least potentially exclusive of others." 43 C.F.R. § 2561.05(b) (1977). Examiners were to be instructed in native customs and land use patterns and interpreters were to be provided if needed. *Pence I*, 529 F.2d at 137.

hearing was entirely within the discretion of the BLM.

The court reasoned that the ANLAA provided eligible Alaska Natives with a sufficient property interest to merit due process protection. It found the BLM procedures constitutionally deficient, primarily because they did not provide applicants with an opportunity to present oral evidence to the decisionmaker (the BLM) prior to issuance of a final decision. The court remanded the case to the district court with instructions to the Secretary "to develop regulations which provide for the required procedures, subject to review by the district court and, if necessary, by this court." 529 F.2d at 143.

Rather than promulgate new regulations, the Interior Board of Land Appeals (IBLA) announced in *Donald Peters*, 26 I.B.L.A. 235 (1976) (*Peters I*), that it would henceforth apply the Interior Department's existing contest regulations, published at 43 C.F.R. § 4.451 *et seq.* (1976), to the adjudication of Native allotment applications.[6] The Secretary approved the adoption of the regulations. Although they do not alter the field examination procedure, the regulations provide for an oral hearing before an administrative law judge prior to the BLM's final decision on the applicant's allotment claim.

Peters, whose application was remanded to the BLM for proceedings under 43 C.F.R. § 4.451 *et seq.*, sought and received reconsideration of the decision in *Peters I*. He argued that the procedures adopted were too "technical and formal" to provide due process protection to often illiterate Native applicants. On reconsideration, the IBLA reaffirmed its contention that the regulations meet the *Pence I* requirements. *Donald Peters* (On Reconsideration) 83 I.D. 564, 28 I.B.L.A. 153 (1976) (*Peters II*).

The case was not appealed, but appellants here raise essentially the same due process argument urged by the applicant in *Peters II*.[7] They complain *inter alia* that the notice of a preliminary adverse finding (the contest complaint) is not likely to reach applicants, nor to be understood by them; and in particular that an applicant must respond to the contest complaint with a specific answer in writing within 30 days or lose the opportunity for an oral hearing.

## STANDING

Before we can reach the merits of appellants' due process claim, we must decide the preliminary question whether they have standing to challenge the constitutionality of the contest complaint procedures. The regulations, having just been adopted, have not yet been applied to these plaintiffs.[8] It follows, the Secretary argues, that appellants have not been injured in fact and therefore lack standing to challenge the constitutionality of the regulations.

Standing is one aspect of justiciability: "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction . . . ." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (emphasis in original)). The plaintiff must have suffered "some threatened or actual injury resulting from the putatively illegal action . . ." *Linda R. S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). Furthermore, in class actions, the named representatives "must allege and show that they personally have been injured, not that

---

6. The regulations at 43 C.F.R. § 4.451 *et seq.* (1976), incorporate by reference, with some exceptions, the provisions of 43 C.F.R. § 4.450 (1976), governing private contests and the general hearing procedures in 43 C.F.R. 4.20–.30, 4.420–.423 (1976).

7. Donald Peters and these appellants are represented by the same organization, Alaska Legal Services Corporation.

8. Although in *Peters I*, the IBLA remanded the case to the BLM with instructions to provide an oral hearing pursuant to the contest complaint procedures, 26 I.B.L.A. at 245, nothing in the record indicates that the hearing has taken place, or that the procedures have been applied in other cases.

injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth*, 422 U.S. at 502, 95 S.Ct. at 2207 (quoted in *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)); *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

■ The Secretary's argument also raises the question of ripeness, another aspect of justiciability related to the question of standing.[9] Standing and ripeness are similar in that both doctrines prevent courts from becoming enmeshed in abstract questions which have not concretely affected the parties.[10] In *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), the Supreme Court explained that ripeness has "a twofold aspect, . . . the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."

■ Within the context of pre-enforcement challenges to agency regulations, fitness for judicial decision requires a finding that the agency action is final and that the issues involved are legal ones. *Abbott Laboratories*, 387 U.S. at 149, 87 S.Ct. 1507. Here, adoption of the contest complaint procedures is sufficiently final,[11] but the question whether the new procedures afford allotment applicants due process is not purely legal.

The court in *Pence I* identified certain minimum due process requirements that the Secretary had to meet in promulgating new regulations. It recognized, however, that "[b]eyond this bare minimum, it is difficult to determine exactly what procedures would best meet the requirements of due process." 529 F.2d at 143.

■ The court pointed out that "the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." 529 F.2d at 142 (quoting *Goss v. Lopez*, 419 U.S. 565, 577–78, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)). The question whether the new procedures protect due process rights of applicants requires factual development, and should not be decided in the abstract as appellants would have us do.[12]

■ Appellants also fail to meet the second leg of the *Abbott Laboratories* test: hardship to the parties. They do not allege that the regulations have an impact on them which "is sufficiently direct and immediate." 387 U.S. at 152, 87 S.Ct. 1507; *cf. Regional Rail Reorganization Act Cases*,

---

9. *See Warth v. Seldin*, 422 U.S. 490, 499 n.10, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

10. The basic rationale of the ripeness doctrine is

to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

11. The record on appeal contains a memorandum from the Director, Office of Hearings and Appeals, Alaska Task Force, dated June 30, 1976, in which the Secretary and an Assistant Secretary approved adoption of the contest complaint procedures. The validity of such approval remains at issue in the district court, but the intent of the Secretary to go forward with application of the regulations is clear. In addition, the IBLA firmly announced its intention to apply the regulations to applicants in *Peters II*. *See Abbott Laboratories*, 387 U.S. at 149–50, 87 S.Ct. 1507; *Continental Air Lines v. C. A. B.*, 173 U.S.App.D.C. 1, 522 F.2d 107, 125–26 (1974) (en banc only on the ripeness issue).

12. In *Abbott Laboratories*, the parties agreed that the issue, construction of a statute, was "purely legal." 387 U.S. at 149, 87 S.Ct. 1507. In *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 145, 95 S.Ct. 335, 359, 42 L.Ed.2d 320 (1974), the Court decided that a constitutional issue was ripe for review because "we will be in no better position later than we are now to confront the validity of the . . . provisions."

In contrast, the parties here dispute whether the question is "purely legal" and we will be in a significantly better position to confront the question of validity of the regulations after the factual development which will occur through application of the regulations.

419 U.S. 102, 143–45, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). This aspect of ripeness overlaps the standing requirement that the plaintiffs show "threatened or actual injury." *Linda R. S.*, 410 U.S. at 617, 93 S.Ct. 1146. Appellants argue that class members are threatened with injury to their property interest in allotments because the overly technical new procedures will operate to deny the oral hearing mandated by *Pence I*. Although threatened injury is sufficient to confer standing, the threat must be " 'real and immediate,' not 'conjectural' or 'hypothetical.' " *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (quoting *Golden v. Zwickler*, 394 U.S. 103, 109–10, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969)).

It is by no means clear that the class representatives or any other members of the appellant class will be injured as a result of the decision to adopt the contest complaint procedures. The class certified by the district court consisted of "those Alaska Natives, . . . , who were eligible to apply for land allotments pursuant to [ANLAA] prior to its repeal in . . . 1971." *Pence v. Morton*, 391 F.Supp. 1021, 1023 (D.Alaska 1975). To be a class member, therefore, plaintiffs need not have even applied for an allotment.

 The question of the constitutionality of the regulations should await litigation by plaintiffs who have actually tested the new procedures and suffered harm as a consequence in order to "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

Appellants rely on *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, *reh. denied*, 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 765 (1972), and *Childs v. United States Board of Parole*, 511 F.2d 1270 (D.C. Cir.1974), in asserting that "plaintiffs need not claim injury due to the denial of their allotments to have standing to challenge the fairness of the contest complaint procedures." [13] In *Fuentes*, however, the plaintiffs had actually been subjected to the replevin statute at issue. 407 U.S. at 70–71, 92 S.Ct. 1983. Similarly in *Childs*, plaintiffs who complained that Parole Board practices violated due process alleged that they had applied for and been denied parole. 511 F.2d at 1274.[14]

Because these appellants have not been injured by the adoption of the new regulations and do not show a sufficiently imminent threat of injury, they do not have standing to mount a general attack on the constitutionality of those regulations. For related reasons, the issue of the constitutionality of the regulations is not ripe for judicial review.

Appellants argue alternatively that the initial injury to their constitutional rights found sufficient to allow an attack upon the prior procedures in *Pence I* confers standing to support a challenge to the new proce-

---

**13.** They also cite *Dan J. Sheehan Co. v. Occupational Safety & H.R. Com'n*, 520 F.2d 1036 (5th Cir. 1975), *cert. denied*, 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976), and *Committee for GI Rights v. Calloway*, 518 F.2d 466 (D.C. Cir. 1975). In *Sheehan*, the court found that even though plaintiff had not been directly penalized under a challenged regulatory scheme, he had experienced its chilling effect because the threat of penalties influenced him not to assert his right to a fair hearing. He thus suffered actual injury which conferred standing. In *Committee for GI Rights*, the court found that even though not all the named plaintiffs in a class action had been subjected to all of the challenged regulations, many of

them had been subjected to many of the regulations. Because the regulations, together, formed an allegedly unconstitutional program, plaintiffs had standing to challenge the whole program.

**14.** There were two justiciability issues in *Childs*: whether the action was moot because Childs was out of prison and whether, in order to have standing, plaintiffs had to allege that lack of due process was the reason for denial of their parole applications. The issue was not moot because intervenors met the standing requirement and to meet that requirement, they did not have to assert a causal relationship between lack of due process and denial of the applications.

dures on remand.[15] They claim that denial of standing would be tantamount to holding that successful litigants may not seek judicial review to question the character of the relief the district court might order.

They also point out that in *Pence I,* the court expressly provided for review of the new procedures "by the district court and, if necessary, by this court." 529 F.2d at 143. On this theory, appellants have standing to raise the narrow question whether the adoption of contest complaint procedures complies with the *Pence I* mandate. It is this issue which we address.

## COMPLIANCE WITH PENCE I

The *Pence I* court found that the principal flaw in the field examination procedure was the failure to provide applicants with an opportunity "to present to the ultimate decision-maker [the BLM] evidence which supports the application." 529 F.2d at 142. The opportunity to present evidence to the field examiner failed to meet due process requirements because the examiner was primarily a fact gatherer who could recommend a result but could not decide the issue.[16]

Allowing applicants to submit written evidence to the decisionmaker did not cure the constitutional defect. The court found that such procedures disadvantage Alaska Natives because they may well be "even less educated and literate than most American welfare recipients." They also noted that acceptance only of written evidence denies the decisionmaker the chance to assess "the demeanor and attitude" of witnesses and denies applicants the chance to tailor their arguments to the concerns of the decisionmaker. 529 F.2d at 142–43.

To guide the Secretary in developing new regulations, the court set out the following minimum due process requirements.

[A]pplicants whose claims are to be rejected must be notified of the specific reasons for the proposed rejection, allowed to submit written evidence to the contrary, and, if they request, granted an opportunity for an oral hearing before the trier of fact where evidence and testimony of favorable witnesses may be submitted before a decision is reached to reject an application for an allotment.

529 F.2d at 143.

In adopting the regulations set out at 43 C.F.R. § 4.451 *et seq.* (1976), the Secretary intended that they take effect upon a preliminary decision by the field examiner to deny the application. At that point, the BLM must file a complaint and serve a copy on the applicant within 30 days of filing. 43 C.F.R. § 4.450–3 (1976). The complaint must provide "[a] statement in clear and concise language of the facts constituting the grounds of the contest." *Id.* at § 4.450–4.[17] The IBLA has stated, however, that it will neither serve a complaint nor provide a hearing if the application "must be rejected

---

15. In *Pence I,* this court did not discuss whether the appellants had standing to challenge the constitutionality of the procedures then utilized to decide allotment claims. However, the issue in *Pence I* was different than on this appeal. There, the central question was whether Alaska Natives, eligible for allotments under the AN-LAA, have a sufficient property interest to entitle them to a due process hearing before allotments are denied them. The resolution of the question was largely a matter of ascertaining the intent of Congress. Although it does not specifically appear that the named appellants had applied for and been denied allotments under the field examination procedures, *Pence v. Morton,* 391 F.Supp. 1021, 1023 (D.Alaska 1975), those procedures had been applied to the appellant class since at least June of 1970. *See* 43 C.F.R. § 2561 (1977).

Now that the right to a due process hearing has been established, appellants raise the separate question whether new procedures, not yet enforced by the promulgating agency, which purport to provide a fair hearing, comply with due process. It is this question which considerations of standing and ripeness prevent us from reaching.

16. The court found the situation analogous to that in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In *Goldberg,* the Supreme Court found it improbable that caseworkers who are engaged in gathering the facts which determine eligibility for welfare would be able to make an unbiased presentation of the applicant's case to the decisionmaker. *Pence I,* 529 F.2d at 142.

17. Section 4.450–4 which governs private contests provides as follows:

(a) *Contents of complaint.* The complaint shall contain the following information, under oath:

as a matter of law." *Peters I,* 26 I.B.L.A. at 241 n.1.

The applicant has 30 days from service of the complaint or the date of last publication (if notice is by publication) to file an answer. 43 C.F.R. § 4.450–6 (1976). Although § 4.450–6 requires an answer "specifically meeting and responding to the allegations of the complaint," the IBLA has announced its intention to accept "[a] sim-

(1) The name and address of each party interested;

(2) A legal description of the land involved;

(3) A reference, so far as known to the contestant, to any proceedings pending for the acquisition of title to, or an interest, in such land;

(4) A statement in clear and concise language of the facts constituting the grounds of contest;

(5) A statement of the law under which contestant claims or intends to acquire title to, or an interest in, the land and of the facts showing that he is qualified to do so;

(6) A statement that the proceeding is not collusive or speculative but is instituted and will be diligently pursued in good faith;

(7) A request that the contestant be allowed to prove his allegations and that the adverse interest be invalidated;

(8) The office in which the complaint is filed and the address to which papers shall be sent for service on the contestant; and

(9) A notice that unless the contestee files an answer to the complaint in such office within 30 days after service of the notice, the allegations of the complaint will be taken as confessed.

(b) *Amendment of complaint.* Except insofar as the Manager, Administrative Law Judge, Director, Board or Secretary may raise issues in connection with deciding a contest, issues not raised in a complaint may not be raised later by the contestant unless the administrative law judge permits the complaint to be amended after due notice to the other parties and an opportunity to object.

(c) *Corroboration required.* All allegations of fact in the complaint which are not matters of official record or capable of being judicially noticed and which, if proved, would invalidate the adverse interest must be corroborated under oath by the statement of witnesses. Each such allegation of fact must be corroborated by the statement of at least one witness having personal knowledge of the alleged fact and such fact must be set forth in the statement. All statements by witnesses shall be attached to the complaint.

(d) *Filing fee.* Each complaint must be accompanied by a filing fee of $10 and a deposit of $20 toward reporter's fees. Any complaint which is not accompanied by the required fee and deposit will not be accepted for filing.

(e) *Waiver of issues.* Any issue not raised by a private contestant in accordance with

the provisions of paragraph (b) of this section, which was known to him, or could have been known to him by the exercise of reasonable diligence, shall be deemed to have been waived by him, and he shall thereafter be forever barred from raising such issue.

43 C.F.R. § 4.450–4 (1976).

These procedures are modified in government contests by § 4.451–2.

The proceedings in Government contests shall be governed by the rules relating to proceedings in private contests with the following exceptions:

(a) No corroboration shall be required of a Government complaint and the complaint need not be under oath.

(b) A Government contest complaint will not be insufficient and subject to dismissal for failure to name all parties interested, or for failure to serve every party who has been named.

(c) No filing fee or deposit toward reporter's fee shall be required of the Government.

(d) Any action required of the contestant may be taken by any authorized Government employee.

(e) The statements required by § 4.450–4(a)(5) and (6) need not be included in the complaint.

(f) No posting of notice of publication on the land in issue shall be required of the Government.

(g) Where service is by publication, the affidavits required by § 4.450–5(b)(1) need not be filed. The contestant shall file with the Manager a statement of diligent search which shall state that the contestee could not be located after diligent search and inquiry, the last known address of the contestee and the detail of efforts and inquiries made to locate the party sought to be served. The diligent search shall be concluded not more than 15 days prior to the filing of the statement.

(h) In lieu of the requirements of § 4.450–5(b)(3)(ii) the contestant shall, as part of the diligent search before the publication or within 15 days after the first publication send a copy of the complaint by certified mail, return receipt requested, to the contestee at the last address of record. The return receipts shall be filed in the office in which the contest is pending.

(i) The affidavit required by § 4.450–5(c)(3) need not be filed.

(j) The provisions of paragraph (e) of § 4.450–4(e) shall be inapplicable.

43 C.F.R. § 4.451–2 (1976).

ple denial of the truth of the allegation . . ., or an assertion of use and occupancy sufficient to qualify for an allotment" as adequate "to raise an issue of fact requiring a hearing." *Peters II*, 83 I.D. at 569.

If the answer is timely filed, the case will be referred to an administrative law judge. 43 C.F.R. § 4.450–7(b) (1976). The judge fixes the time and place for the hearing, supervises discovery, and subpoenas witnesses. At the hearing, applicants may be represented by counsel or a family member, submit evidence, and cross-examine witnesses. *Id.* at § 4.452–6. The burden of proof rests with the Native applicant. *Peters I*, 26 I.B.L.A. at 243.

If the answer is not timely filed, "the allegations of the complaint will be taken as admitted by the contestee and the [BLM] will decide the case without a hearing." 43 C.F.R. § 4.450–7(a) (1976). The 30-day answer period, with one narrow exception,[18] will not be extended for any reason. *Sainberg v. Morton*, 363 F.Supp. 1259, 1262 (D.Ariz.1973).[19]

Appellants contend that in view of the limited capacities of Native applicants these procedures are too rigid and technical to assure due process.[20] They argue that the Secretary should be required to adopt simple informal procedures such as those employed in federal public assistance terminations. *See* 45 C.F.R. § 205.10 *et seq.* (1976). Because we have decided that our review must be limited to whether the contest complaint procedures meet the minimum due process requirements of *Pence I*, we shall address only appellants' objections which go to those specific requirements.

*NOTICE:*

According to *Pence I*, "applicants whose claims are to be rejected must be notified of the specific reasons for the proposed rejection." 529 F.2d at 143. Under the new procedures, the contest complaint must state clearly the factual grounds for denial of the application. Appellants protest that the complaint is inadequate to give notice because the BLM is excused from providing information which private contestants must supply. For example, a government complaint need not state the law on which the government relies, nor include corroboration of the allegations of the complaint. 43 C.F.R. § 4.451–2(a)(e) (1976), set forth fully at note 17, *supra*.

Appellants have failed to demonstrate how tailoring the complaint to meet the needs of government contestants denies applicants fair notice. The ANLAA is the source of the applicants' rights to allotments. The BLM's objections can only be

---

**18.** The regulations provide for a 10-day "grace period" for filing if it is determined that the document "was transmitted or probably transmitted" to the proper office before expiration of the 30-day period. 43 C.F.R. § 4.422(a) (1976).

**19.** The Secretary asserts that procedures similar to those in 43 C.F.R. § 4.451 *et seq.* have been "explicitly or implicitly" approved by the courts. He cites *United States v. Coleman,* 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170, *reh. denied,* 391 U.S. 961, 88 S.Ct. 1834, 20 L.Ed.2d 875 (1968); *Best v. Humboldt Mining Co.,* 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963); *Cameron v. United States,* 252 U.S. 450, 459–60, 40 S.Ct. 410, 64 L.Ed. 659 (1920); *Orchard v. Alexander,* 157 U.S. 372, 383, 15 S.Ct. 635, 39 L.Ed. 737 (1895); *United States v. Weiss,* 431 F.2d 1402 (10th Cir. 1970); *Foster v. Seaton,* 106 U.S.App.D.C. 253, 271 F.2d 836 (1959); *Sainberg v. Morton,* 363 F.Supp. 1259 (D.Ariz. 1973).

*Sainberg* was the only case in which applicants specifically attacked a 30-day answer requirement. In none of the cited cases did the courts discuss the constitutionality of the procedures.

**20.** In *Peters II,* the applicant also argued that the procedures were inappropriate to Alaska "because of the transportation and communications difficulties within the state." 83 I.D. at 568 (quoting Petition for Reconsideration). The IBLA noted in response:

This argument, if meritorious, would compel the logical conclusion that the contest procedures are inapplicable within the State of Alaska not only in Native allotment hearings but in mining claim and homestead contests as well. The Department, however, has always applied the regulations concerning contest procedures equally to Alaska and the lower 48 States.

83 I.D. at 568.

Appellants do not press that argument in this case.

742

based upon failure to meet the ANLAA requirements. A statement of the applicable law in the complaint is thus unnecessary. In any event, once the administrative law judge has been appointed and has fixed a place and date for hearing, he or she must send applicants a notice stating "the legal authority and jurisdiction under which the hearing is to be held and . . . the matters of fact and law asserted." *Id.* at § 4.452–2.

It is also unnecessary to require the BLM to corroborate the allegations of the complaint within the complaint itself. The applicant can utilize pre-hearing discovery and direct confrontation of government witness to determine the bases for the allegations. *Id.* at § 4.452–1.[21] Other variations in the complaint procedures for government contestants are similarly unrelated to whether the complaint provides adequate notice of the reasons for rejection.[22]

Appellants also point out that when notice by publication is authorized, the BLM need neither send a copy of the published notice to the applicant at the post office nearest the land, nor post a copy of the published notice on the land. *Id.* at § 4.451–2(f), (g). Consequently, they argue, many applicants may fail to receive notice.[23]

Allotment applicants, however, unlike defendants in civil suits, may be presumed to be aware of pending allotment proceedings because they will have initiated those proceedings by filing applications. Instances in which the BLM is required to give notice by publication should be rare. The possibility of harm from waiver of the posting and

mailing requirements for government contestants is remote and conjectural, especially since the BLM is required to file a statement that the applicant could not be located after a diligent search and inquiry before it can give notice by publication. *Id.* at § 4.451–2(g).

We conclude that the contest complaint procedures meet the *Pence I* notice requirements.

## SUBMISSION OF WRITTEN EVIDENCE:

Even under the procedures in effect prior to *Pence I*, applicants were allowed to present written evidence to the BLM to dispute an adverse initial determination by the field examiner. *Pence I*, 529 F.2d at 138. That option is still available if the applicant chooses to waive a hearing. If the applicant requests a hearing by responding to the contest complaint, he or she may present such evidence at the hearing. 43 C.F.R. § 4.452–6 (1976).

## OPPORTUNITY FOR AN ORAL HEARING:

■ Appellants' main contention is that the 30-day answer requirement, 43 C.F.R. §§ 4.450–6, .450–7(a) (1976), combined with the requirement that the complaint raise a disputed issue of material fact, *Peters II*, 83 I.D. at 569, will effectively prevent many applicants from receiving a fair hearing because their responses will be untimely or inadequate.[24]

---

21. The reason for the corroboration requirement in private contests is undoubtedly to allow the agency to screen unmeritorious complaints.

22. *See* note 17, *supra*.

23. Appellants also suggest that the complaint should bear a partial bilingual notice such as a tag line in the appropriate Alaska Native dialect instructing the recipient that the notice is important and the recipient should get it translated. They do not assert that Alaska Natives are more likely to be literate in their own languages, but even if the use of such a device increases the likelihood applicants will receive notice, we leave it to the agency to determine whether to adopt it. It suffices that a bilingual

notice, though possibly helpful, is not required by *Pence I*.

24. Appellants err in contending that, because the IBLA has the power to require the administrative law judge to make only a recommended decision and may in some cases make the initial decision in the case, 43 C.F.R. § 4.452–8(c) (1976), the procedures do not comply with the *Pence I* requirement that the oral fair hearing be before the actual decisionmaker.

First, we do not discern any eagerness on the part of the IBLA to become the primary decisionmaker in these land allotment cases. It will likely exercise its power only in extraordinary cases. Second, when the IBLA does exercise its power to make the initial decision, it

Again, it is necessary to consider the context within which the Native applicant is asked to respond. The applicant will have already filed an application in writing and will have been through a field examination before receiving the contest complaint. He or she is likely to be alert to the significance of a communication from the BLM and to seek assistance in responding.

Appellants make much of the IBLA's footnoted explanation in *Peters I* that the BLM may reject a claim without a hearing if it determines that rejection is required as a matter of law. 26 I.B.L.A. at 241 n.1. Given that the applicable law is the ANLAA, the IBLA must have been referring to cases in which the applicant fails to state facts which establish eligibility for an allotment.

If, for example, an applicant files a claim but does not allege that he or she is an Alaska Native, we cannot say that rejection of the claim without hearing violates the *Pence I* requirements. The aggrieved applicant may always appeal the decision to the IBLA, 43 C.F.R. § 4.400 *et seq.* (1976), which can correct error by the BLM.

The IBLA has indicated that it will not require an answer specifically refuting all the allegations of the complaint, but will instead accept a simple general denial or a statement of facts supporting a claim. *Peters II*, 83 I.D. at 569. With respect to the 30-day limit, we note that the agency has an interest in promptly adjudicating allotment claims. Although the 30-day deadline appears rigid, the IBLA has pointed out its

willingness to introduce some flexibility into other apparently rigid filing requirements,[25] and implies that it may do so here.[26]

Appellants propose that they be allowed orally to request a hearing in response to the contest complaint; that applicants be allowed 90 days to respond; and that if responses are received beyond the 90-day period they be considered timely, but subject to challenge upon a BLM showing of prejudice from the delay.[27]

The *Pence I* court recognized the difficulty of determining "what process is due" once it has been established that due process does apply. 529 F.2d at 142 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). It acknowledged the "intensely practical" nature of the determination and concluded that "procedures must be provided to the extent that the benefit of avoiding unwarranted rejections of allotment applications is not outweighed by the administrative burden on the government." 529 F.2d at 142.

In this case, it is not clear whether the 30-day answer requirement will create an undue risk that valid applications will be rejected. Thus, the benefit of adopting the procedures suggested by appellants appears slight. On the other hand, the burden of providing for oral responses and extending the time for response is likely to be considerable. Although we are forced to speculate in applying this balancing test, we cannot say that the 30-day answer requirement contravenes the *Pence I* mandate.

acts similarly to a trial court judge utilizing a special master to receive evidence and make findings of fact, a procedure long accepted in federal courts. *See* Fed.R.Civ.Proc. 52(a), 53(c).

25. The IBLA points to cases in which notices of appeal from BLM decisions were not timely filed or were filed by an improper representative. *Peters II*, 83 I.D. at 569 n.4. The IBLA exercised discretion to reinstate the appeals, even though the regulation establishing a 30-day time limit to appeal contains mandatory language similar to that in § 4.450–7. 43 C.F.R. § 4.411 (1976).

26. The literal language of *Sainberg v. Morton*, 363 F.Supp. 1259, 1263 (D.Ariz.1973), seems to preclude the Secretary from waiving the 30-day answer requirement when the applicant pleads that late filing was the "result of mistake, inadvertence and excusable neglect." The question of the limits of the Secretary's discretion under these regulations is not before us, however, and we express no opinion whether such an exercise of discretion would be permissible.

27. Appellants derived their proposals from guidelines contained in the State of Alaska Aid to Families with Dependent Children Manual, VI–12.

*EVIDENCE AND TESTIMONY OF FA-VORABLE WITNESSES:*

The contest complaint procedures allow applicants to submit written and oral evidence at the hearing, including the testimony of favorable witnesses. 43 C.F.R. §§ 4.452–4 to .452–6. Appellants protest that the procedure during the hearing is too "technical," yet nothing in the regulations appears to bar an applicant from making a simple oral presentation of his or her case. Appellants argue that applicants should be able to be represented by any friend or spokesperson. Representation by an attorney or a relative is provided for, however, and there is no showing that such representation is likely to be inadequate.

CONCLUSION

We find that the appellants lack standing to mount a general due process attack upon the contest complaint procedures adopted by the Secretary of the Interior pursuant to our decision in *Pence I.* They do, however, have standing to question whether the new procedures comply with the due process requirements outlined in *Pence I.* We conclude that the new procedures, as interpreted by the IBLA to allow a simple response to the contest complaint by the applicant, facially comply with the *Pence I* requirements.

The orders denying injunctive relief to the appellants and granting partial summary judgment to the Secretary are affirmed. The case is remanded to the district court so that it may dispose of the remaining questions not certified for this interlocutory appeal.