702 F.2d 193
 9 Ed. Law Rep. 1148
 Nely L. JOHNSON; Mark T. Johnson, by his guardian ad litem
Pamela Webb-Selden; Brian J. Freeman; Phillippe C.
Freeman, Louis R. Freeman and Pierre A. Freeman, by their
guardian ad litem Pamela Webb-Selden, et al., Plaintiffs-Appellants,
and
Daniel R. Barde, Plaintiff,
v.
Sedley N. STUART, Wanda Silverman, Kenneth Smith, Clifford
Freeman, Joyce Benjamin, et al., Defendants-Appellees.
 No. 80-3451.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 7, 1982.
Decided March 25, 1983.
 
 David H. Wilson, Portland, Or., for plaintiffs-appellants.
 James E. Mountain, Salem, Or., Donald C. Jeffery, Portland, Or., for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before BROWNING, Chief Judge, WALLACE and BOOCHEVER, Circuit Judges.
 BROWNING, Chief Judge:
 
 
 1
 Public School teachers, students, and students' parents brought suit under 42 U.S.C. Sec. 1983 against the Oregon State Board of Education, the Oregon State Textbook Commission, Portland School District No. 1 J, and Gresham Grade School District No. 4,[1] challenging the constitutionality of Oregon's textbook selection statute, Or.Rev.Stat. Secs. 337.011-.260 (1981), under the first and fourteenth amendments to the United States Constitution.
 
 
 2
 On cross motions for summary judgment, the district court held the students and parents lacked standing to sue and the teachers did not present a controversy ripe for decision. We affirm the dismissal of the teachers' claim, but reverse the dismissal of the claims of the students and their parents.
 
 I.
 
 3
 Chapter 337 of the Oregon Revised Statutes establishes a multi-stage scheme for selection of textbooks to be used in Oregon public schools. Section 337.260 of the statute reads:
 
 
 4
 Every board, commission, committee or officer responsible for the selection of textbooks for use in the public schools shall select textbooks on American history and government which adequately stress the services rendered by those who achieved our national independence, who established our form of constitutional government and who preserved our federal union. No textbook shall be used in the schools which speaks slightingly of the founders of the republic or of those who preserved the union or which belittles or undervalues their work. Respect for all people, regardless of race, color, creed, national origin, age, sex, or handicap, and their contributions to our history and system of government shall be reflected in the textbooks adopted by the State Board of Education.
 
 
 5
 (Emphasis added). Appellants contend the second sentence is unconstitutional.
 
 
 6
 Under the statute the State Board of Education establishes guidelines and criteria for the review and selection of textbooks, Or.Rev.Stat. Sec. 337.035, and appoints a State Textbook Commission to review and select suggested textbooks for each grade and subject. Or.Rev.Stat. Secs. 337.011, .050. In even-numbered years the Superintendent of Public Instruction, under the direction of the State Board, mails a circular to major textbook publishing companies that quotes the statute, including the challenged provision. Or.Rev.Stat. Sec. 337.030. The list of selected textbooks compiled by the Textbook Commission is submitted to the State Board which may ratify or reject any textbook listed. Or.Rev.Stat. Sec. 337.055. Copies of the list are transmitted to district school boards. School boards may adopt and use textbooks in place of or in addition to those listed by the State Board, but the substituted textbooks must meet the requirements of the statute and the criteria established by the State Board. Or.Rev.Stat. Sec. 337.141.
 
 II.
 
 7
 The teachers, through their representative associations,[2] assert they have sustained "injury-in-fact" because the statutory scheme denies them the opportunity to use books in the classroom that express views inconsistent with the statute.
 
 
 8
 They point out that although the first sentence of section 337.260 is directed only to those "responsible for the selection of textbooks," the second sentence prohibits, in general terms, the use of any textbook "which speaks slightingly of the founders of the republic ...." The teachers argue that because their employment contracts require them to obey all Oregon laws, they would breach their contracts and could lose their jobs if they used a forbidden textbook. They concede, however, that no teacher has been charged with violating section 337.260, and no teacher has been denied permission to use any book.
 
 
 9
 The teachers rely on Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), and Vorbeck v. McNeal, 407 F.Supp. 733 (E.D.Mo.1976) (three-judge court), aff'd 426 U.S. 943, 96 S.Ct. 3160, 49 L.Ed.2d 1180 (1976), as authority that even though the statute has not been enforced against them and there is no threat of such enforcement, the mere existence of the statute chills their exercise of free speech as teachers and is sufficient to give them standing. But Epperson, Craig, and Vorbeck involved statutes aimed directly at those asserting standing to challenge them. In Epperson, teachers challenged a criminal statute that forbade "any teacher ... to teach" Darwin's theory of evolution. 393 U.S. at 99 n. 3, 89 S.Ct. at 267 n. 3. In Craig the Court noted "[t]he legal duties created by the statutory sections under challenge are addressed directly to vendors such as appellant." 429 U.S. at 194, 97 S.Ct. at 455. In Vorbeck, police officers challenged a police department rule providing that "[a]ll members of the department are forbidden ... to become members of" any union. 407 F.Supp. at 737.
 
 
 10
 Section 337.260 was not intended to regulate the conduct of teachers. The language of the second sentence of the section is broad, but it must be read in context. Considered as a whole, chapter 337 of the Oregon Revised Statutes applies only to those empowered to select textbooks for use in the schools. Nothing in the record suggests that section 337.260 limits the teachers' use of supplemental materials or the scope of classroom dialogue, or that teachers face a credible threat of discharge or discipline under the statute. The Attorney General of Oregon has repeatedly disavowed any interpretation of section 337.260 that would make it applicable in any way to teachers, and counsel for the Portland School District has stated his agreement with this position. On this record Oregon teachers have "no fears of [discharge or discipline] except those that are imaginary or speculative ...." Babbitt v. United Farm Workers National Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (quoting Younger v. Harris, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971)). They have failed to show that they have "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant[s]." Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979).
 
 III.
 
 11
 The students claim Oregon's school book screening system restricts their first amendment right of free access to information.
 
 
 12
 To establish actual injury from a restriction of the right to receive information, there must be a speaker who is willing to convey the information. Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 756-57, 96 S.Ct. 1817, 1822-1823, 48 L.Ed.2d 346 (1976). "[W]here a speaker exists, ... the protection afforded is to the communication, to its source and to its recipients both." Id. at 756, 96 S.Ct. at 1822.
 
 
 13
 The district court took judicial notice that textbooks "that belittle the work of the founders of the republic or preservers of the union exist," and that consequently "a 'willing speaker' could be said to be present in this case." Neither party challenges this factual premise. As persons who would have received the information except for its alleged suppression by the state, the students were directly injured if a constitutional violation occurred.[3]
 
 
 14
 The district court held the students nonetheless lacked standing because textbooks were tested against numerous criteria in addition to those stated in section 337.260 and books that did not conform to section 337.260 may not have been rejected for that reason but rather for non-compliance with any of the other criteria. Therefore the court held the students had failed to show that "but for" the section 337.260 standard, books that did not conform to this standard "would be in their classrooms."
 
 
 15
 The court erred in requiring the students to meet a "but for" test. The requirement that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1976), requires "no more than a showing that there is a 'substantial likelihood' that the relief requested will redress the injury claimed ...." Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 75 n. 20, 98 S.Ct. 2620, 2631 n. 20, 57 L.Ed.2d 595 (1978); Legal Aid Society of Alameda County v. Brennan, 608 F.2d 1319, 1333 (9th Cir.1979). This court has approved Professor Davis's suggestion that "when proof of causal relationship between governmental action and injury to a plaintiff is difficult or impossible, the court should make a judgment as to whether the causal relation is probable enough to allow standing." Boating Industry Associations v. Marshall, 601 F.2d 1376, 1383 (9th Cir.1979) (quoting K. Davis, Administrative Law Treatise Sec. 22.20 at 196 (Supp.1978)).
 
 
 16
 The statutory scheme challenged in this case would allow appellees to enforce the statute sub silentio, allowing the students no reasonable opportunity to prove particular books either were not submitted or were rejected in compliance with the statute. Every two years the State Board distributes a circular to publishers quoting the statute and stating that any contract with the state for books will require the publisher to agree to abide by the statute. The Textbook Commission states it abides by the law and considers the statute in selecting textbooks. When a book is rejected neither the Board nor the Commission gives reasons. These circumstances, considered with the fact that books that do not conform with section 337.260 exist but are not found in Oregon schools, make it "probable enough" that as a result of Oregon's book screening system, publishers were prevented from submitting non-conforming books to the Textbook Commission or that such books were screened out by the Textbook Commission or the State Board without notice or comment. We conclude it is "substantially likely" that the injunctive relief sought would redress the injury claimed.
 
 
 17
 The students also satisfy the prudential limitations on standing. Their claim of restricted access to information is not a mere generalized grievance, but an injury "peculiar to ... a distinct group of which [they are] a part ...." See Gladstone, Realtors, 441 U.S. at 100, 99 S.Ct. at 1608; Legal Aid Society of Alameda County, 608 F.2d at 1336. They assert their own legal rights and not those of third parties. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 102 S.Ct. 752, 759-60, 70 L.Ed.2d 700 (1982); Legal Aid Society of Alameda County, 608 F.2d at 1336. And their claim "fall[s] within 'the zone of interests to be protected or regulated by the ... constitutional guarantee in question.' " Valley Forge Christian College, 102 S.Ct. at 760 (quoting Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970)).
 
 
 18
 We also agree with the students' contention that their claim is ripe for decision.
 
 
 19
 Ripeness has a " 'twofold aspect, ... the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' " Pence v. Andrus, 586 F.2d 733, 737 (9th Cir.1978) (quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). Since the students have sustained actual injury and this injury would be redressed by the relief sought, the constitutional requirement of ripeness as well as standing is met. See Duke Power Co., 438 U.S. at 81, 98 S.Ct. at 2634.
 
 
 20
 The prudential aspects of ripeness are also satisfied. Because the statutory scheme permits sub silentio enforcement of the challenged statutory provision, the district court in all likelihood "will be in no better position later than [it is] now to confront the validity" of section 337.260, Regional Rail Reorganization Act Cases, 419 U.S. 102, 145, 95 S.Ct. 335, 359, 42 L.Ed.2d 320 (1974), quoted in Pence v. Andrus, 586 F.2d at 737 n. 12. The challenge is to the statute on its face, rather than as applied. Deferring adjudication would add nothing material to resolution of the legal issues presented, and delay would foreclose relief for those students presently being denied free access to information in the continuing process of their education. Moreover, "[r]estraint on expression may not generally be justified by the fact that there may be other times, places, or circumstances available for such expression." Minarcini v. Strongsville City School District, 541 F.2d 577, 582 (6th Cir.1976).
 
 
 21
 Our conclusion as to the standing of the students and the ripeness of their claims applies equally to the parents, for they may assert claims of constitutional violation primarily affecting their children's education. See, e.g., Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969); Meyer v. Nebraska, 262 U.S. 390, 400, 43 S.Ct. 625, 627, 67 L.Ed. 1042 (1923).
 
 
 22
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 [1]
 Although Gresham School District No. 4 was served with process, it did not file an Answer to the Complaint or make an appearance before either the district court or this court
 
 
 [2]
 An association has standing to sue as a representative of its members if its "members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." Warth v. Seldin, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). Thus, the teacher associations have standing if the teachers would have standing in their own right. See Black Faculty Ass'n of Mesa College v. San Diego Community College Dist., 664 F.2d 1153, 1156 (9th Cir.1981)
 
 
 [3]
 Since the complaint was dismissed for lack of standing and as not presenting a controversy ripe for decision, we express no opinion on the constitutionality of the challenged provision